# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **MIREHAM HAZLETT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Case No. 3:20-cv-00804** |
| **FAMILY DOLLAR STORES OF** | ) | **Judge Aleta A. Trauger** |
| **TENNESSEE, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM

Plaintiff Mireham Hazlett has filed suit against her former employer, Family Dollar Stores of Tennessee, Inc. ("Family Dollar"), asserting that she experienced discrimination based on her national original and/or pregnancy, in violation of Title VII of the 1964 Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e, the Pregnancy Discrimination Act amendment to Title VII, 42 U.S.C. § 2000e(k), and the Americans with Disabilities Act, 42 U.S.C. § 12112(b)(5)(A). Now before the court is Family Dollar's Motion to Dismiss and Compel Arbitration, supported by a Memorandum of Law and several Declarations and other exhibits. (Doc. Nos. 10, 11, 11-1, 14-1.) The plaintiff has filed a Response in opposition, supported by her own Declaration. (Doc. Nos. 13, 13-1.) The defendant filed a Reply (Doc. No. 14), and, with the court's permission, the plaintiff filed a Surreply (Doc. No. 18).[1]

For the reasons set forth herein, the Motion will be denied.

---

[1] The court denied Family Dollar's request to respond to the Surreply. (Doc. No. 20.)

## I.     FACTUAL BACKGROUND

According to his Declaration, Vincent Votta is employed by Dollar Tree Management, Inc. ("Dollar Tree") as the Manager of Talent Acquisition Operations and, in this role, provides support to Dollar Tree subsidiaries, including Family Dollar. (Doc. No. 11-1, Votta Decl. ¶ 2.) He is familiar with the electronic onboarding process used by Family Dollar, and he has access to Family Dollar's electronic records documenting each employee's onboarding process. (*Id.* ¶ 5.) Among other things, these records show "when and whether each current or former Family Dollar employee electronically executed Family Dollar's Mutual Agreement to Arbitrate Claims ('Arbitration Agreement')." (*Id.*)

According to Votta, Family Dollar requires each new employee to go through an electronic "onboarding process." (*Id.* ¶ 6.) In October 2015, when Hazlett was initially hired by Family Dollar, Family Dollar utilized a password-protected online system called "Taleo" for the onboarding process. (*Id.*) To create a Taleo account, each prospective employee entered a unique username and self-selected confidential password in order to submit an employment application. (*Id.* ¶ 7.) Once the applicant received an employment offer, she would ordinarily utilize the same username and password to complete the onboarding process. According to Votta, access to a prospective employee's Taleo account required entry of the individual's unique username and password. (*Id.*)

As Votta describes it, an individual who received an offer of employment was required to review her offer letter electronically on the Taleo platform, indicate her acceptance of the offer by clicking on a box that stated "I accept," and enter the last four digits of her social security number, which was deemed to constitute her electronic signature. (*Id.* ¶ 8.) The offer letter itself contained the following language referencing arbitration:

> [A]s a condition of employment with Family Dollar, you will be subject to and requested to execute a *Mutual Agreement to Arbitrate Claims*, which will require that both you and Family Dollar agree to arbitrate covered disputes, including . . . disputes arising out of or in connection with the employment relationship.

(*Id.* ¶ 9; *see also* Votta Decl. Ex. A, Doc. No. 11-1, at 9.) Once she accepted the employment offer, the prospective employee would then be required to select the language she preferred (English or Spanish) for reviewing the Family Dollar "Open Door Guidelines" and Arbitration Agreement. (Votta Decl. ¶ 10; *see also* Votta Decl. Ex. B, Doc. No. 11-1, at 11.) And, once she made that selection, the prospective employee would review a memorandum describing the company's Open Door Communication Guidelines and Mutual Agreement to Arbitrate Claims ("Memorandum"). (Votta Decl. ¶ 11; *see also* Votta Decl. Ex. C, Doc. No. 11-1, at 13.)

The Memorandum explained that the Arbitration Agreement was "a stand-alone agreement that will apply company-wide" and that all employment-related disputes between Family Dollar and its employees

> must be resolved individually in arbitration—not by way of a judge or jury. The Arbitration Agreement requires both you and Family Dollar to arbitrate covered disputes, as defined by the Arbitration Agreement, before a private and neutral third-party chosen by the [employee] and Family Dollar.

(Doc. No. 11-1, at 13.) After reviewing the Memorandum, the prospective employee would click "continue" to proceed to the Arbitration Agreement.

As reflected in the documents attached to Votta's Declaration, the Arbitration Agreement itself plainly states, in its first paragraph: "**All disputes covered by this Agreement between me [the employee] and the Company [Family Dollar] shall be decided by an arbitrator through arbitration and not by way of a court or jury trial.**" (Votta Decl. Ex. C, Doc. No. 11-1, at 15.) It defines "Disputes Covered by the Agreement" to encompass all claims arising out of the employee's employment or termination of that employment, specifically including claims of

discrimination based on national origin, sex, disability, and "any other characteristic protected by federal, state or local law." (*Id.*)

In the space directly above where the prospective employee should electronically sign the document, the Arbitration Agreement provides:

> **BY SIGNING BELOW, I ACKNOWLEDGE THAT I HAVE CAREFULLY READ AND UNDERSTAND THIS AGREEMENT AND AGREE TO ITS TERMS. I AGREE THAT THROUGH THIS AGREEMENT, THE COMPANY AND I ARE GIVING UP OUR RIGHTS TO A JURY TRIAL AND THAT PURSUANT TO THE TERMS OF THIS AGREEMENT, WE ARE AGREEING TO ARBITRATE DISPUTES COVERED BY THIS AGREEMENT.**

(*Id.* at 16.)

The prospective employee could electronically sign and agree to the Arbitration Agreement by entering the last four digits of her social security number in the space provided for that purpose, just below the above-referenced notice. (*Id.*) If the employee did not accept the Arbitration Agreement, she could not continue with the onboarding process. (Votta Decl. ¶¶ 13–14.) After electronically signing the Arbitration Agreement, the prospective employee was required to confirm her personal email address so that a completed copy of the Arbitration Agreement could be emailed to her. (*Id.* ¶ 16.)

According to Votta, the Taleo system electronically captured each step of the prospective employee's progression through the onboarding sequence. Specifically as pertains to Hazlett, he attests that the "datapoints captured and stored in Taleo . . . reflect that Ms. Hazlett electronically signed the Arbitration Agreement . . . on October 14, 2015" and that a copy of it was emailed to her personal email address on the same date. (*Id.* ¶¶ 19, 20; *see also* Votta Decl. Exs. E, F, Doc. No. 11-1, at 19, 21.)

In response to Family Dollar's Motion to Dismiss and Compel Arbitration and Votta's Declaration, Hazlett submitted her own Declaration. As relevant here, Hazlett avers under oath as follows:

3.     My first date working for Family Dollar was October 14, 2015.

4.     On October 14, 2015, I traveled to the Family Dollar store . . . to complete the onboarding process.

5.     Upon my arrival, I met Layla Sayed, store manager for this Family Dollar store.

6.     For the onboarding process, Ms. Sayed directed me to a computer owned and operated by Family Dollar.

7.     Ms. Sayed logged onto the computer and clicked a number of unknown items on the computer. I was seated in front of the keyboard while Ms. Sayed stood beside the computer with her hand on the mouse. I am unaware of the items Ms. Sayed clicked.

8.     Ms. Sayed clicked on an unknown number of unidentified and undescribed links, immediately scrolled to the bottom of each, and told me to input the last four (4) digits of my social security number to continue.

9.     Ms. Sayed scrolled to the bottom of, and clicked through, an unknown number of items without allowing me time to read the words, terms, or conditions, on the pages.

10.    The only action I took at the computer that date was inputting the last four (4) digits of my social security number to continue. I was not allowed the opportunity to review the words, terms, or conditions on the pages prior to inputting the last four (4) digits of my social security number.

11.    Ms. Sayed maintained control over the computer mouse for the entirety of this process. I never clicked on, scrolled through, understood, or read the documents supposedly presented in this process.

12.    I was completely unaware of any arbitration agreement between me and Family Dollar, and I had no knowledge, nor had I ever seen, heard of, or received any such agreement until the unsigned Agreement was given to me by my attorney prior to the filing of this Motion.

13.    I did not have knowledge of, read, sign, or receive the Arbitration Agreement on my date of hire, nor did I have knowledge of, read, sign, or receive the Agreement at any time throughout my three (3) year employment with Family Dollar.

(Doc. No. 13-1, Hazlett Decl. ¶¶ 3–13.)

Hazlett also states that the onboarding process described by Votta is not what happened in her case and that store managers assisting new hires with the process can, in fact, access the Taleo system without using the new hire's username or password, by accessing the "Career Center" of the system. (*Id.* ¶¶ 17–18.) She also attests that, in her own experience as a store manager, she would initiate the onboarding process for new hires without using their username or password. However, rather than scrolling through the process for new hires, she allowed the prospective employees to do it themselves. (*Id.* ¶ 19.)

With its Reply brief, Family Dollar submitted the Declaration of Lisa Johnson regarding ongoing training provided by Family Dollar to employees after they are hired. According to Johnson, she administers the "Family Dollar University" (FDU"), which entails managing the content of the company's training modules and assigning training modules to Family Dollar associates. (Doc. No. 14-1, Johnson Decl. ¶ 2.) During the time period that corresponded with Hazlett's employment with Family Dollar, employees were "required to read and complete certain eLearning modules in FDU." (*Id.* ¶ 3.) According to Johnson, Family Dollar's electronic records reflect that Hazlett completed the "2015 Team Member Handbook Acknowledgment module on October 24, 2015 at 5:26:13 pm." (*Id.* ¶ 6; *see also* Johnson Decl. Ex. A, Doc. No. 14-1, at 9.) This module allegedly "explain[ed] the purpose of the 2015 Team Member Handbook, and provide[d] instructions on how to download and print a copy of [it]." (Johnson Decl. ¶ 6.) Family Dollar's Team Member Handbook was also available for employees to review at any time by accessing the Family Dollar intranet system using in-store computers. (*Id.* ¶ 7.) The Arbitration Agreement was likewise available online. (*Id.*) Hazlett also completed "Taleo Hiring Process Overview Training,"

required for store managers, in March 2018. (*Id.* ¶ 8; *see also* Johnson Decl. Ex. D, Doc. No. 14-1, at 90–94.)

The Team Member Handbook Training documents attached to Johnson's Declaration do not reference the Arbitration Agreement. (Johnson Decl. Ex. B, Doc. No. 14-1, at 20–26.) The Team Member Handbook itself is 61 pages in length. (Johnson Decl. Ex. c, Doc. No. 14-1, at 28–88.) The five-page Table of Contents does not reference the Arbitration Agreement (*id.* at 31–35); the only reference to it appears on pages 56–57, subsection 9.1.D, within the section titled "Team Member Communication." (*Id.* at 83–84.)

## II.    LEGAL STANDARDS

### A.    The Federal Arbitration Act

The Federal Arbitration Act ("FAA") allows parties to a "contract evidencing a transaction involving commerce" to agree that certain disputes between them arising from such "contract or transaction" will be decided by an arbitrator rather than by a court. 9 U.S.C. § 2. Described by the Supreme Court as the "primary substantive provision" of the FAA, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), Section 2 further provides that any such agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This section embodies "a liberal federal policy favoring arbitration." *AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Moses H. Cone*, 460 U.S. at 24). The principal purpose of the FAA is to ensure the enforcement of private arbitration agreements according to their terms; the broader purpose of allowing parties to submit grievances to arbitration is to facilitate "efficient, streamlined procedures tailored to the type of dispute" at issue. *Id.* at 344 (citations omitted); *see also Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) ("The FAA was designed to override judicial

reluctance to enforce arbitration agreements, to relieve court congestion, and to provide parties with a speedier and less costly alternative to litigation.").

Despite this liberal federal policy favoring arbitration agreements, arbitration is a "matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986); *see also GGNSC Louisville Hillcreek, LLC v. Estate of Bramer*, 932 F.3d 480, 485 (6th Cir. 2019) ("An agreement to arbitrate is fundamentally a matter of consent."). Thus, when considering a motion to compel arbitration, a district court must determine, as a threshold matter, if the parties agreed to arbitrate. *McGee v. Armstrong*, 941 F.3d 859, 865 (6th Cir. 2019); *Stout*, 228 F.3d at 714. The court "use[s] state law to assess the existence of an agreement." *GGNSC Louisville*, 932 F.3d at 485 (citations omitted).

As the party moving to compel arbitration, Family Dollar bears the ultimate burden of establishing the existence of a valid agreement to arbitrate and must, as an initial step, come forward with some evidence showing that the plaintiff agreed to arbitrate. *See Foust v. Comcast Corp.*, No. 3:19-CV-173-HSM-DCP, 2020 WL 1891755, at *4 (E.D. Tenn. Jan. 28, 2020) (citations omitted); *see also Carbon Processing & Reclamation, LLC v. Valero Mktg. & Supply Co.*, 823 F. Supp. 2d 786, 803 (W.D. Tenn. 2011) ("Under Tennessee law, a plaintiff alleging breach of contract must prove (1) the existence of a contract . . . ." (citation omitted)). "[O]nce *prima facie* evidence of the agreement has been presented, the burden shifts to the party opposing arbitration" to show that there is a genuine issue of fact as to the validity of the agreement. *Foust*, 2020 WL 1891755, at *4 (citation omitted).

### B. Rule 12(b)(1) or 12(b)(6)

The defendant seeks dismissal under Rule 12(b)(1), for lack of subject-matter jurisdiction, and, alternatively, Rule 12(b)(6), for failure to state a claim for which relief may be granted.

The existence of an arbitration agreement "does not technically deprive the Court of subject matter jurisdiction,' and so such a motion is more properly brought under Rule 12(b)(6) than Rule 12(b)(1)." *Jacobs Field Servs. N. Am., Inc. v. Wacker Polysilicon N. Am., LLC*, 375 F. Supp. 3d 898, 910 (E.D. Tenn. 2019) (quoting *Moore v. Ferrellgas, Inc.*, 533 F. Supp. 2d 740, 744 (W.D. Mich. 2008)); *see also Johnson Assocs. Corp. v. HL Operating Corp.*, 680 F.3d 713, 717–18 (6th Cir. 2012) (recognizing that, "as a practical matter, an enforceable contractual right to compel arbitration operates as a quasi-jurisdictional bar to a plaintiff's claims, providing grounds for dismissal of the suit" but that, unlike actual subject-matter jurisdiction, it is a waivable affirmative defense). Thus, Rule 12(b)(1) does not govern the defendant's motion.

Nor, actually, does Rule 12(b)(6). On the face of the Complaint, the plaintiff adequately pleads her claims of employment discrimination, and she does not mention or reference the Arbitration Agreement. Moreover, both parties have presented numerous documents outside the pleadings, none of which is "referred to in the Complaint [or] central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Ordinarily, such documents cannot be considered in the context of ruling on a Rule 12(b)(6) motion without converting it into one for summary judgment. *See* Fed. R. Civ. P. 12(d).

Thus, when parties litigating the application of an arbitration agreement rely on documents outside the pleadings, the Sixth Circuit has applied the summary judgment standard under Federal Rule of Civil Procedure 56. *See, e.g.*, *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). The plaintiff, as the party opposing arbitration, "must show a genuine issue of material fact as to the validity of the agreement to arbitrate. The required showing mirrors that required to withstand summary judgment in a civil suit." *Id.* Applying this "summary-judgment-like standard," the court will ultimately "conclude as a matter of law that the parties did or did not enter

into a contract containing an arbitration clause . . . only if 'there is no genuine dispute as to any material fact' concerning the agreement's formation." *Ford v. Midland Funding, LLC*, 264 F. Supp. 3d 849, 854 (E.D. Mich. 2017) (quoting *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016), and Fed. R. Civ. P. 56(a)).

## III.    ANALYSIS

### A.    The Parties' Arguments

Family Dollar seeks dismissal of the Complaint or, alternatively, an order compelling arbitration, on the basis that Votta's testimony and Family Dollar's electronic records show that Hazlett accepted the offer of employment, which was expressly conditioned upon her agreeing to arbitrate employment-related claims against Family Dollar, and that she electronically signed the Arbitration Agreement by entering the last four digits of her social security number where indicated at the bottom of the last screen showing the terms of the Arbitration Agreement. Family Dollar asserts that the Arbitration Agreement is valid and enforceable, supported by adequate consideration, and covers the subject matter of the Complaint.

Hazlett's only argument in response is that her Declaration testimony gives rise to a genuine factual dispute as to whether she ever saw, read, signed, reviewed, acknowledged, or received the Arbitration Agreement at any time prior to filing this lawsuit. She also alleges that she was unaware that Family Dollar believed that acceptance of the Arbitration Agreement was a condition of her continued employment. Thus, she contends, there is a question of fact as to whether a valid contract to arbitrate was formed, under Tennessee law of contract formation.

In its Reply, Family Dollar points out that Hazlett "admits that she signed the Arbitration Agreement by entering her electronic signature when prompted during the onboarding process," that other evidence shows that she had "multiple subsequent encounters with the Arbitration Agreement," including that the completed document was emailed to her personal email address,

and that the caselaw upon which she relies is distinguishable. (Doc. No. 14, at 1.) Family Dollar asserts, in particular, that (1) Hazlett signed the Arbitration Agreement and had an obligation under the law to learn its contents before doing so, and she does not claim that she was induced by fraud to sign without reading what she was signing; (2) Hazlett knew or should have known about the Arbitration Agreement, since she received a copy of her signed agreement by email, as well as the Team Member Handbook, which includes an arbitration policy generally describing the terms of the Arbitration Agreement; (3) as a store manager responsible for onboarding new employees, she was charged with being familiar with the contents of the Team Member Handbook and "all company policies and processes" (Doc. No. 14, at 4), and she completed training for store managers in 2018 that covered the topics of "arbitration compliance" and acceptance of the employment offer, required of all new hires (*see* Doc. No. Doc. No. 14-1, at 93); and (4) a copy of the Arbitration Agreement remained available to Hazlett throughout her employment on the Family Dollar intranet system accessible to employees on in-store computers. In light of this evidence, Family Dollar insists, "it defies belief to imply that the existence of the Arbitration Agreement and its terms were ever withheld from [Hazlett]." (Doc. No. 14, at 4.)

In her Surreply, the plaintiff generally argues that, notwithstanding the defendant's arguments, the record as a whole reflects a genuine dispute as to whether the plaintiff assented to arbitration. (Doc. No. 18.)

### B.     Whether the Plaintiff Has Established a Material Factual Dispute

The threshold issue to be resolved in ruling on a motion to compel arbitration is whether the parties agreed to arbitrate. *See, e.g.*, *Andrews v. TD Ameritrade, Inc.*, 596 F. App'x 366, 371 (6th Cir. 2014). The plaintiff's opposition to the defendant's Motion is premised entirely on her position that no contract to arbitrate was formed.

Under Tennessee law, "in order for a contract to be consummated, the parties must mutually assent to the material terms. Tennessee courts have referred to this requirement as a 'meeting of the minds.' . . . The traditional common-law rule is that where mutual assent is lacking, no contract was ever formed." *Allstate Ins. Co. v. Tarrant*, 363 S.W.3d 508, 528 (Tenn. 2012) (internal citations omitted); *see also Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001) (an enforceable contract must, among other things, "result from a meeting of the minds in mutual assent to terms" of the agreement (citation omitted)). "[W]hether a meeting of the minds occurred is a question of fact." *Wofford v. M.J. Edwards & Sons Funeral Home Inc.*, 490 S.W.3d 800, 807 (Tenn. Ct. App. 2015) (citation omitted).

The defendant points out that Tennessee courts have "repeatedly held that in the absence of fraud . . . [a]n individual who signs a contract is presumed to have read the contract and is bound by its contents." *Wofford*, 490 S.W.3d at 810 (internal citations and quotation marks omitted).[2] As the plaintiff argues, however, that presumption is one that may be overcome. As Tennessee courts have also repeatedly recognized, "the law presumes that persons who sign documents, *having been given an opportunity to read them*, are bound by their signatures." *Church v. Perales*, 39 S.W.3d 149, 161 (Tenn. Ct. App. 2000) (emphasis added); *see also Solomon v. First Am. Nat. Bank*, 774 S.W.2d 935, 943 (Tenn. Ct. App. 1989) ("Ordinarily, one having *the ability and opportunity to inform himself of the contents of a writing before he executes it* will not be allowed to avoid it by showing that he was ignorant of its contents or that he failed to read it." (emphasis added)).

In this case, while the defendant's records reflect that the plaintiff's electronic signature is affixed to the electronic version of the Arbitration Agreement, the plaintiff's testimony gives rise

---

[2] There is no dispute that, in Tennessee, an electronic signature has the same effect as a handwritten signature. Tenn. Code Ann. § 47-10-107(a).

to a question of fact as to whether she actually had the opportunity to read or review any part of the Arbitration Agreement before being asked to sign it electronically. Moreover, according to her version of events, Hazlett did not simply sign a contract without reading it or asking for additional time to read it, as occurred with several of the plaintiffs in *Hammond v. Floor & Decor Outlets of America, Inc.*, No. 3:19-CV-01099, 2020 WL 6459642 (M.D. Tenn. Nov. 3, 2020) (Trauger, J.), and the cases cited therein. *See id.* at *9, 12. Instead, she alleges that the store manager, Layla Sayed, maintained control over the computer mouse at all times during her onboarding process, scrolled rapidly through documents displayed on the screen in quick succession, pausing long enough only to have the plaintiff enter the last four digits of her social security number a couple of times but without explaining to the plaintiff what she was signing or even that she was signing a contract.

This case is markedly similar to that of *Roberts-Banks v. Family Dollar of Tennessee, Inc.*, No. 3:19-cv-00010, 2019 WL 5075832 (E.D. Tenn. Oct. 9, 2019), in which the court likewise found a material factual dispute as to whether a valid arbitration agreement had been formed. In that case, the plaintiff alleged that her manager had complete control of the computer during the plaintiff's onboarding process, and the plaintiff herself did not scroll through the documents or click on the box to demonstrate her assent to the Arbitration Agreement—her supervisor did that as well. The only part of the training/onboarding documents she was actually expected to look at concerned the sale of tobacco products. *Id.* at *3. In Hazlett's case, the system had apparently changed slightly to require entry of the last four digits of a social security number rather than simply clicking on a box that said, "I accept," to signal agreement to the Arbitration Agreement. Functionally, however, the result is the same: in both plaintiffs' version of events, they had no opportunity to review or understand any part of what they were being asked to sign.

In short, the court finds that the plaintiff's Declaration, if true, shows that she had no reason even to know that she was signing an arbitration agreement. Consequently, it creates a material factual dispute as to whether there was "a meeting of the minds in mutual assent" to the terms of the Arbitration Agreement, as required to form a contract. *Doe*, 46 S.W.3d at 196.

Family Dollar attempts to avoid this result by arguing that Hazlett nonetheless knew or should have known about the Arbitration Agreement, because she received a copy of her signed agreement by email. Hazlett, however, denies receiving a copy of the Arbitration Agreement by email. Even if the court presumes that she did receive such an email, the defendant does not indicate in what form the email was sent or whether it would have alerted Hazlett to the fact that she had signed an agreement to arbitrate. Moreover, it is not clear that *post hoc* receipt of an emailed document, without more, would have been sufficient to bind Hazlett to an agreement that otherwise was not validly formed.

The defendant also contends that Hazlett's receipt of the Team Member Handbook put her on notice that she was subject to a binding Arbitration Agreement. However, as indicated above, the only reference to arbitration contained in that document was buried more than fifty pages into it, and there is no indication in the record that Family Dollar's training on the Handbook incorporated any reference to the Arbitration Agreement or provided notice to Hazlett (or any other employee) that continued employment would be deemed consent to arbitrate employment-related disputes.

Family Dollar insists that, as a store manager responsible for onboarding new employees, Hazlett was charged with being familiar with the contents of the Team Member Handbook and "all company policies and processes" (Doc. No. 14, at 4) and that she completed training for store managers in March 2018 that covered the topics of "arbitration compliance" and acceptance of the

employment offer, required of all new hires. (*See* Doc. No. Doc. No. 14-1, at 93.) Even assuming that this training went over the arbitration agreement in any detail, it occurred several years after the plaintiff's hire date. Family Dollar has not shown that, as part of this training, managers were informed that a new hire's employment offer was conditioned on assent to the Arbitration Agreement, and, even assuming that they were so informed, there is no indication that the plaintiff knew or should have known that the same policy would have been in effect at the time she was hired or that it applied to current employees as well as new hires. Thus, the fact that the plaintiff may have had access to training materials on the Arbitration Agreement as a manager in 2018 does not establish that she entered into a binding agreement at the time of her hire in 2015.

Likewise, the fact that a copy of the Arbitration Agreement remained available to Hazlett on the Family Dollar intranet system does not establish that a contract was formed, particularly because the defendant has not pointed to any reason why Hazlett would seek to access an agreement of whose existence she was ignorant.

In short, the evidence to which the defendant points simply serves to further establish that a material factual dispute exists as to whether Hazlett had notice that she was signing an Arbitration Agreement when she entered her electronic signature into Family Dollar's computer during her onboarding process and, therefore, as to whether a valid contract was formed.

## IV.    CONCLUSION

For the reasons forth herein, the defendant's Motion to Dismiss and Compel Arbitration (Doc. No. 10) will be denied. An appropriate Order is entered herewith.

_____
ALETA A. TRAUGER
United States District Judge